EDNA H. KOPPEL, Landlord, *v.* MONTY EVELYN, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, October 10, 1955.

*Benjamin Whitestone* for landlord.

*Norman D. Archer* for tenant.

LORETO, J. This rent nonpayment proceeding involves the interesting question of whether a landlord may receive an increased rent where the tenant of an apartment dies leaving in sole occupancy his son, who had been continuously residing therein with his father prior to the latter's death.

The landlord made a demand upon the surviving son of a rent at 15% higher than that last paid on the premise that a new tenancy came into being and that therefore the increase is permissible under the statute.

This is a novel point on which the attorneys for the parties submitted no law and the court in its research has not found any reported case.

The court believes that the landlord under the facts of this case may not recover the higher rent sought herein. The tenancy admittedly was a statutory one and on the death of the tenant, the continued occupancy of the apartment by his son became protected by the emergency rent act. Subdivision 4 of section 56 of the State Rent and Eviction Regulations issued thereunder provides that " No occupant of housing accommodations shall be evicted under this section where the occupant is either the surviving spouse of the deceased tenant or some other member of the deceased tenant's family who has been living with the tenant ". However, where the surviving spouse or other members of the deceased tenant's family had not been residing with him prior to his death but had entered into possession immediately thereafter, this protection is not granted (*Bowman Realty Corp.* v. *Trice,* 205 Misc. 588).

Here, the tenancy of the deceased father expired with his death and while no new tenancy with his son was created by any agreement express or implied, it is by reason of the prior statutory tenancy of the deceased that assured continued occupancy passed on to any surviving members of his family residing with him. It is by virtue of compulsion of the law that the landlord is constrained to allow them to remain (*Gilligan* v. *Tishman Realty & Constr. Co.,* 283 App. Div. 157, affd. 306 N. Y. 974).

The present occupant is not an intruder nor a tenant in ordinary meaning of the term as he never entered into an agreement with the landlord as to the duration of his occupancy and the amount of rent to be paid therefor, the conventional requisites for such a relationship. However, the Legislature defined the term " tenant " under subdivision 7 of section 2 of the State Residential Rent Law (L. 1946, ch. 274, as amd.) as follows: " A tenant, subtenant, lessee, sublessee, or other person entitled to the possession or to the use or occupancy of any housing accommodation ".

Thus, he is given the status of tenant and protection only by reason of the act and the regulations issued thereunder and for duration of the emergency.

The purpose and intent of the emergency rent statute must be kept in mind. It is twofold; the protection of the occupancy of tenants in their housing accommodations and the control of the rent that may be charged and collected.

The protection of occupancy without at the same time a control of rent ceiling, under such circumstances as those at bar, would be contrary to the spirit and intent of the act. For the assurance of continued occupancy of residential quarters might well prove meaningless and illusory if the remaining family occupants bereft by death of their principal provider are required to pay an increased rent in order that they may be allowed to remain in possession.

The tenant having duly offered the rent found due, which was not accepted by the landlord, this proceeding is dismissed without prejudice to a proper demand.